1  HULETT HARPER STEWART LLP
    KIRK B. HULETT, SBN: 110726
2  kbh@hulettharper.com
    DENNIS STEWART, SBN: 99152
3  dstewart@hulettharper.com
    SARAH P. WEBER; SBN: 239979
4  sweber@hulettharper.com
    550 West C Street, Suite 1600
5  San Diego, CA 92101
    Telephone:      (619) 338-1133
6  Facsimile:       (619) 338-1139

7  ABBEY SPANIER RODD ABRAMS &
     PARADIS, LLP
8  ARTHUR N. ABBEY
    aabbey@abbeyspanier.com
9  NANCY KABOOLIAN
    nkaboolian@abbeyspanier.com
10 212 East 39th Street
    New York, NY 10016
11 Telephone:      (212) 889-3700
    Facsimile:       (212) 684-5191

12 Attorneys for Plaintiff Joseph Maniglia
    [Additional Counsel on Signature Page]
13

**FILED**

JUL 19 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

C06 - 04427

14                THE UNITED STATES DISTRICT COURT OF CALIFORNIA

15                          NORTHERN DISTRICT – SAN JOSE DIVISION

16 | JOSEPH MANIGLIA, Individually and On Behalf of All Others Similarly Situated, | Case No.
17 |  | 
    |  | **CLASS ACTION COMPLAINT**
18 | Plaintiff, |
19 | v. |
    |  | **JURY TRIAL DEMANDED**
20 | HAROLD HUGHES, GEOFF TATE, ROBERT EULAU, SATISH RISHI and RAMBUS INC., |
21 |  |
22 | Defendants |

CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Complaint, alleges upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters based upon *inter alia*, the investigation made by and through his attorneys, which included, among other things, a review of the public documents, Securities and Exchange Commission ("SEC") filings, analyst reports, news releases and media reports of Rambus Inc. ("Rambus" or the "Company"), as follows:

## JURISDICTION AND VENUE

1. The claims alleged herein arise under Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

2. The jurisdiction of this Court is based on Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331 (federal question jurisdiction).

3. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act. Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of materially false and misleading information, occurred in this judicial district. At the time of the wrongs complained of herein, Rambus maintained its executive offices at Los Altos, California.

4. In connection with the acts, transactions and conduct alleged herein, Defendants used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of a national securities exchange and market.

## THE PARTIES

5. Plaintiff Joseph Maniglia purchased shares of Rambus common stock during the Class Period, as set forth in the accompanying Certification, and has been damaged as a result of Defendants' conduct as alleged herein.

6. Defendant Rambus engages in the invention and license of chip interface technologies in California. Its memory interface products include DDR interface solution, which provides a comprehensive suite of interface cells and services; RDRAM memory interface, which

1

CLASS ACTION COMPLAINT

1   enables exceptional system bandwidth-to-cost ratios for a broad range of consumer electronic,
2   networking, and computing applications; and XDR DRAM technology, a total memory system
3   solution, which is used for graphics processing, consumer electronics, network, and server
4   applications. The Company's logic interface products include PCI express interface products,
5   which support applications in computing, communications and consumer electronics systems,
6   including graphics, core electronics chip sets, switch and bridge chips; high-speed input/output
7   interfaces; networking interfaces; and interface solutions for high speed backplane application. Its
8   licensed products are used in a range of computing, consumer electronics and communications
9   applications. In addition, the company offers engineering services to companies to help them
10  integrate its interface technologies into their chip and system products. It sells its interfaces and
11  licenses to customers in the Far East, North America, and Europe. Rambus was founded in 1990
12  and is headquartered in Los Altos, California. Rambus common stock trades on the NASDAQ
13  under the symbol "RMBS."

14      7.    Defendant Harold Hughes ("Hughes") has served as Chief Executive Officer and
15  President of Rambus since January 2005, as acting Chief Financial Officer of Rambus since March
16  2006 and as a director since June 2003.

17      8.    Defendant Geoff Tate ("Tate") has served as the non-employee Chairman of the
18  Board of Directors since January 2005. From May 1990 to January 2005, Tate served as Chief
19  Executive Officer, and from January 2005 to January 2006, he served as a part-time executive
20  employee. Tate served as President, Chief Executive Officer and director from May 1990 to
21  December 1999.

22      9.    Defendant Robert K. Eulau ("Eulau") was Senior Vice President and Chief
23  Financial Officer, from May 2001 until March 2, 2006.

24      10.    Defendant Satish Rishi ("Rishi") currently serves as Senior Vice President,
25  Finance and Chief Financial Officer since April 2006, replacing Eulau.

26      11.    Defendants Hughes, Tate, Eulau and Rishi are collectively referred to as the
27  "Individual Defendants."

28

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased Rambus common stock during the period from January 14, 2004 to July 18, 2006, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are the Company, its officers and directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in which the Company has a controlling interest or of which the Company is a parent or subsidiary.

13. The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impractical. As of January 31, 2006, the Company had over 100,907,174 million shares of common stock outstanding. While the exact number of Class members is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, over one thousand members of the Class who held Company stock.

14. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendants engaged in acts or conduct in violation of the federal securities laws as alleged herein;

    b. Whether Defendants had a duty to disclose certain information;

    c. Whether Defendants acted negligently, knowingly or recklessly in making materially false and misleading statements or in failing to correct such statements upon learning that they were materially false and misleading during the Class Period;

    d. Whether the market price of the Company's common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

    e. Whether members of the Class have sustained damages and, if so, the proper measure of damages.

15. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

16. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

17. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impractical. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**Fraud on the Market Presumption**

18. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a. Defendants made public misrepresentations or failed to disclose material facts regarding Rambus's financial situation during the Class Period;

    b. the omissions and misrepresentations were material;

    c. the securities of the Company traded at all relevant times on the NASDAQ, an efficient and open market;

    d. the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    e. Plaintiff and the members of the Class, without knowledge of the misrepresented facts, purchased their Rambus securities between the time Defendants failed to disclose and/or misrepresented material facts and the time the truth was disclosed.

19. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

### The Safe Harbor Provision is Inapplicable

20.     The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, there were no statements made with respect to any of those representations forming the basis of the Complaint that actual results "could differ materially from those projected," and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Rambus who knew that those statements were false when made.

### SUBSTANTIVE ALLEGATIONS

21.     A stock option granted to an employee of a corporation allows the employee to purchase company stock at a specified price – referred to as the "exercise price" – for a specified period of time. Stock options are granted as part of employee compensation packages as an incentive to boost profitability and stock value. When the employee exercises the option, he or she purchases the stock from the company at the exercise price regardless of the stock's price at the time the option is exercised. If the exercise price is lower than it should be, the employee pays less and the company gets less when the stock option is exercised. When shares rise above that price, the holder can profit by buying shares at the lower exercise price and selling them at the higher market price, profiting from the difference, less transaction costs and taxes.

22.     The practice of manipulating stock options dates not only potentially lines the pockets of the Individual Defendants but also resulted in the overstatement of Rambus's profits

5

between 2003 and the first quarter of 2006. This is because options priced below the stock fair market value when they are awarded bring the recipient an instant paper gain. Under accounting rules that is the equivalent of additional compensation and thus must be treated as a cost to the company. Rambus did not properly account for the options granted. As a result of the Company manipulating the actual dates of measurement for stock options, Rambus was forced to restate its previously issued financial statements for the fiscal years 2003, 2004, 2005, which are included in the Company's Annual Report on Form 10-K for the year ended December 31, 2005. In addition, the Company stated that the Quarterly Reports on Form 10-Q filed with respect to each of these fiscal years and the financial statements included in the Company's Quarterly Report on Form 10-Q for the first quarter of fiscal year 2006 should no longer be relied upon and will be restated. The restatement will also affect financial statements for prior fiscal years and the Company will reflect those adjustments as a part of the opening balances in the financial statements for the restatement period.

23. On January 15, 2004, Rambus reported financial results for its fourth quarter and year ended December 31, 2003. Earnings per share for the December quarter were 8 cents, compared to 6 cents in the same period the prior year and 5 cents in the previous quarter. Net income for the December quarter was $8.6 million (27% of revenue), compared to $5.5 million in the same period the prior year and $5.0 million in the previous quarter. Revenue for the quarter was $32.4 million, up 26% over the same period the prior year and up 13% from the previous quarter. Rambus's press release stated, in relevant part:

> "Rambus had excellent performance and delivered on a number of important customer commitments throughout the fourth quarter," said Geoff Tate, CEO of Rambus Inc. "We were pleased with Toshiba's announcement that samples of their XDR DRAM chip are now available. Our PCI Express IP solutions continue to gain momentum in the marketplace. Finally, we completed the acquisition of high speed signaling assets from Velio which we expect will enable even more solutions for customers in the future. The transaction with Velio also allowed us to hire 14 high-caliber employees with solid experience who will continue working on product development."
>
> Fourth quarter results reflected $4.6 million in contract revenues, up 234% over the same period last year and up 15% from the previous quarter. This increase in contract revenues over the same period last year primarily reflects contracts signed in 2003 for our XDR memory interface and Redwood interface technologies.

1    December's quarterly results include $27.8 million in royalties, up 14% over the same period last year and up 13% from the previous quarter.

Total costs and expenses in the December quarter decreased 4% from last quarter primarily as a result of a 51% decrease in litigation expense. The increase in cost of contract revenues related to the achievement of certain contractual delivery milestones associated with XDR memory interface, Redwood interface and RaSer interface technologies. This increase was partially offset by a decline in research and development expenses. Total costs and expenses were $21.3 million compared with $18.9 million in the comparable period last year and $22.2 million last quarter.

24.   On February 13, 2004, Rambus filed with the SEC on its Annual Report on Form 10-K for the period ending December 31, 2003. The 2003 Form 10-K reiterated the financial results announced on January 15, 2004. In connection with such report, the Company submitted to the SEC the certifications of the principal executive officer and the principal financial officer of the Company as required pursuant to 18 U.S.C. § 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. Defendants Tate and Eulau signed the certifications for the 2003 Form 10-K.

25.   The January 15, 2004 press release and 2003 Form 10-K were materially false and misleading because the Company failed to properly expense non-cash stock-based compensation which should have been recorded with respect to stock option grants and, that the amount of such additional expenses is material.

26.   On January 18, 2005, Rambus reported its financial results for the fourth quarter of 2004. Earnings per share for the quarter were 6 cents, compared to 8 cents in the fourth quarter of the prior year and 10 cents in the previous quarter. Net income for the fourth quarter was $6.5 million (17% of revenue), compared to $8.6 million in the fourth quarter of the prior year and $10.4 million in the previous quarter. Revenue for the fourth quarter was $38.6 million, up 19% over the fourth quarter of the prior year and down slightly from the previous quarter. The press release stated as follows:

> "Our quarterly revenue growth of 19% demonstrates continued momentum," said Harold Hughes, chief executive officer at Rambus. "We achieved record revenue for the year at nearly $145 million and our profitability continues to be solid. I am excited to be CEO at Rambus and look forward to leading this team as we help our semiconductor and systems customers deliver new levels of product performance."

> Fourth quarter results reflected $6.0 million in contract revenues, up 31% over the fourth quarter last year and down 27% from the previous quarter. This increase in contract revenues over the fourth quarter last year primarily reflects revenues from contracts signed in 2003 for XDR memory and Redwood interface technologies. The decrease in contract revenue from the previous quarter primarily reflects a decrease in revenue recognized on one serial link contract. Fourth quarter results include $32.6 million in royalties, up 17% over the fourth quarter last year and up 7% from the previous quarter. The increase in royalties over the fourth quarter last year primarily reflects an increase in SDRAM and DDR royalties.
>
> Total costs and expenses were $29.0 million compared with $21.3 million in the fourth quarter last year and $28.1 million last quarter. $5.2 million of this increase over the fourth quarter of last year was due to litigation expense. The provision for income taxes was down $0.1 million from the fourth quarter last year and was up $2.6 million from the previous quarter. The increase in the provision for income taxes relative to the previous quarter was attributable primarily to increased credits on foreign taxes withheld which were recognized in the third quarter of 2004.
>
> Cash, cash equivalents and marketable securities increased $17.3 million to $236.4 million since September 30, 2004. This increase was primarily a result of proceeds from the exercise of employee stock options of $10.6 million, cash generated from operations of $8.6 million which was partially offset by $1.4 million invested in property and equipment.

27. On February 17, 2005, Rambus filed with the SEC its Annual Report on Form 10-K for the period ending December 31, 2004. The 2004 Form 10-K reiterated the financial results announced on January 18, 2005. In connection with such report, the Company submitted to the SEC the certifications of the principal executive officer and the principal financial officer of the Company as required pursuant to 18 U.S.C. § 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. Defendants Hughes and Eulau signed the certifications for the 2004 Form 10-K.

28. The February 17, 2005 press release and 2004 Form 10-K were materially false and misleading because the Company failed to properly expense non-cash stock-based compensation which should have been recorded with respect to stock option grants and, that the amount of such additional expenses is material.

29. On February 7, 2006, Rambus announced that Defendant Eulau would resign from Rambus effective March 2, 2006. Defendant Hughes served as interim CFO.

8

CLASS ACTION COMPLAINT

30. On January 18, 2006, Rambus reported its financial results for the fourth quarter of 2005. Fully diluted earnings per share for the fourth quarter were 9 cents, compared to 6 cents in the fourth quarter in the prior year and 14 cents in the previous quarter. Operating income for the fourth quarter was $7.3 million, compared to $9.6 million in the fourth quarter of the prior year and $3.9 million the previous quarter. Net income for the fourth quarter of 2005 was $9.4 million as compared to $6.5 million in the fourth quarter of the prior year and $14.5 million in the previous quarter. The quarterly earnings per share and net income reflect a pre-tax gain of $5.4 million resulting from repurchases of notes during the quarter versus a pre-tax gain of $18.6 million in the third quarter relating to the repurchase of notes. Revenue for the fourth quarter was $41.6 million, up 7.7% over the fourth quarter last year and up 15.5% from the previous quarter. The press release stated:

> "We are pleased with the results for the fourth quarter. We achieved record revenue and finished the year by signing an important patent licensing agreement with AMD for which payments will begin in 2006," said Harold Hughes, president and chief executive officer at Rambus. "We built a strong foundation this past year with achievements that demonstrate the value of our technology and give us a solid start to the new year."
>
> Fourth quarter results reflected $6.9 million in contract revenues, up 14.3% over the fourth quarter last year and down 13.5% from the previous quarter. The sequential decrease reflects timing of deliverables under certain memory and serial link technology development contracts. Fourth quarter results include $34.7 million in royalties, up 6.5% over the fourth quarter last year and up 23.7% from the previous quarter. The sequential increase in royalties is primarily due to the first quarterly royalty payment of $5.9 million from Infineon under the license agreement announced in March 2005.
>
> Total costs and expenses for the fourth quarter of 2005 were $34.3 million compared with $29.0 million in the fourth quarter last year and $32.1 million last quarter. Research and development expense, and marketing, general and administrative expenses, increased $3.4 million and $1.8 million respectively, compared with the fourth quarter of 2004. The increase in research and development expense reflects investment in research and development capability in the United States and Bangalore, while the increase in marketing, general and administrative expenses is a reflection of our commitment to a strong sales presence and a strong infrastructure to support our business as it grows.
>
> Rambus reported a pre-tax gain of $5.4 million on the repurchase of $35 million face value of its zero coupon convertible notes during the quarter. The notes were repurchased for a total of $29 million in cash. Primarily as a result of the repurchase of the notes and the repurchase of approximately one million shares of

common stock for $13 million, cash equivalents and marketable securities declined from $388 million as of September 30, 2005 to $355 million at year-end.

31. On February 21, 2006, Rambus filed with the SEC its Annual Report on Form 10-K for the period ending December 31, 2005. In connection with such report, the Company submitted to the SEC the certifications of the principal executive officer and the principal financial officer of the Company as required pursuant to 18 U.S.C. § 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. Defendants Hughes and Eulau signed the certifications for the 2005 Form 10-K.

32. The February 21, 2006 press release and 2005 Form 10-K were materially false and misleading because the Company failed to properly expense non-cash stock-based compensation which should have been recorded with respect to stock option grants and, that the amount of such additional expenses is material.

33. On May 30, 2006, announced that the Audit Committee of the Company's Board of Directors had commenced an internal investigation of the timing of past option grants and other potentially related issues. The Audit Committee expected to focus primarily on options issued in or before 2003 and announced it would be assisted by outside legal and accounting experts.

34. On June 27, 2006, Rambus announced that the Audit Committee of the Rambus Board of Directors reached a preliminary conclusion that the actual measurement dates for certain stock option grants issued in prior years differ from the recorded grant dates for such awards. As a result, Rambus announced it may need to record additional non-cash charges for stock-based compensation expense related to those prior periods.

35. The June 27, 2006 press release stated that the Audit Committee had not yet completed its investigation. The press release stated in part as follows:

> If the Audit Committee determines that these charges are material, Rambus may need to restate its financial statements for prior fiscal periods. The Company has not yet determined the tax impact that may result from this matter. Any stock-based compensation charges incurred as a result of any such restatement would have the effect of decreasing reported operating income and net income, or increasing reported loss from operations and net loss, and decreasing reported retained earnings figures contained in Rambus' historical financial statements for prior periods, net of any potential income tax effects. Rambus does not expect any

10

CLASS ACTION COMPLAINT

such restatement to have an impact on its historical revenues nor on its determination and ongoing efforts to pursue fair compensation for its patented inventions.

36. On this news the price of Rambus stock dropped from $23.13 to $20.55.

37. Before the market opened on July 19, 2006, Rambus announced it expects to restate its previously issued financial statements to correct errors related to accounting for stock-based compensation expenses. The press release stated as follows:

> As previously announced, the audit committee of the Rambus board of directors is conducting an independent investigation to review the Company's historical stock option grant practices and related accounting. The audit committee is being assisted by independent legal counsel and independent forensic accounting consultants.
>
> The audit committee had reached a conclusion that the actual measurement dates for certain historical stock option grants differ from the recorded grant dates for such awards. The audit committee has not completed its work nor reached final conclusions and is continuing its investigation into the circumstances that gave rise to the differences. The audit committee has determined, based on further analysis, that non-cash stock-based compensation expenses should have been recorded with respect to those stock option grants and recognized over the vesting period of the options, and that the amount of such additional expenses is material.
>
> Further, the audit committee, in consultation with management and after discussion with its auditors on July 17, 2006, has concluded that its previously issued financial statements for the fiscal years 2003, 2004, 2005, which are included in the Company's Annual Report on Form 10-K for the year ended December 31, 2005, the Quarterly Reports on Form 10-Q filed with respect to each of these fiscal years and the financial statements included in the Company's Quarterly Report on Form 10-Q for the first quarter of fiscal year 2006, should no longer be relied upon and will be restated. In addition, the restatement will affect financial statements for prior fiscal years and the Company will reflect those adjustments as a part of the opening balances in the financial statements for the restatement period.
>
> Because the audit committee's review is ongoing, it has not determined the aggregate amount of additional non-cash stock-based compensation expense, nor has it determined the amount of such expense to be recorded in any specific prior period or in any future period. It also has not identified all stock option grants whose accounting measurement dates may have been incorrectly determined, nor whether these would be material. Rambus also expects that expenses arising from the investigation, the restatement and related activities, which will be recorded in the periods incurred, will be significant.
>
> The Company has not yet determined the tax consequences that may result from these matters or whether tax consequences will give rise to monetary liabilities which may have to be satisfied in any future period.

11

CLASS ACTION COMPLAINT

Additionally, Rambus is evaluating Management's Report on Internal Control Over Financial Reporting set forth in the Company's 2005 Annual Report. Although Rambus has not yet completed its analysis of the impact of this situation on its internal controls over financial reporting, it has determined that it is highly likely that Rambus had a material weakness in internal control over financial reporting as of December 31, 2005. A material weakness is a control deficiency, or a combination of control deficiencies, that result in more than a remote likelihood that a material misstatement of the annual or interim financial statements will not be prevented or detected. The existence of one or more material weaknesses as of December 31, 2005 would preclude Rambus from concluding that its internal controls over financial reporting were effective as of December 31, 2005. If Rambus were to conclude that a material weakness existed, it would expect to receive an adverse opinion on internal control over financial reporting from its independent registered public accounting firm.

The audit committee is making every effort to complete its investigation, and the Company will make every effort to file its restated financial statements as soon as practicable after the completion of the investigation. However, Rambus does not expect to file its Quarterly Report on Form 10-Q for the period ended June 30, 2006 by the due date of August 9, 2006 or the extended due date of August 14, 2006. As a result of the delay in filing the Company's Form 10-Q, Rambus expects to receive a notification from Nasdaq that it is not in compliance with the filing requirements for continued listing on Nasdaq and that its common stock may be subject to delisting from the Nasdaq National Market. Following receipt of such a notification, the Company intends to request a hearing before a Nasdaq Listing Qualifications Panel.

38. In the early trading hours after the market opened Rambus stock dropped from $19.60 to $16.94.

39. Defendants engaged in improper practices in order to bolster the Company's stock price. Defendants directly participated in an accounting fraud that materially overstated the Company's financial results in violation of Generally Accepted Accounting Principles ("GAAP"). Defendants materially overstated Rambus's financial results by improperly recording the actual dates of measurement for past stock options grants. As a result of the Company manipulating the actual dates of measurement for stock options, Rambus is forced to restate its previously issued financial statements for the fiscal years 2003, 2004, 2005, which are included in the Company's Annual Report on Form 10-K for the year ended December 31, 2005, the Quarterly Reports on Form 10-Q filed with respect to each of these fiscal years and the financial statements included in the Company's Quarterly Report on Form 10-Q for the first quarter of fiscal year 2006. In addition, the restatement will affect financial statements for prior fiscal years and the Company

1  will reflect those adjustments as a part of the opening balances in the financial statements for the
2  restatement period.

3      40. In knowing or reckless disregard of the truth, Defendants issued and/or
4  participated in the issuance of materially false and misleading statements and financial information
5  to the investing public, as particularized above. These representations were materially false and
6  misleading when made for the reasons set forth herein.

7      41. In addition, the Defendants not only falsely and materially overstated the
8  Company's earnings figures but failed to file financial statements with the SEC that conformed to
9  the requirements of GAAP, such that the financial statements were presumptively misleading and
10 inaccurate pursuant to Regulation S-X, 17 CFR 210.4-01(a)(1).

11     42. As a result of its accounting improprieties, Rambus's reported financial results
12 also violated at least the following provisions of GAAP for which each Defendant is necessarily
13 responsible:

14     The principle that financial reporting should provide information that is useful to
   present and potential investors and creditors and other users in making rational
15 investment, credit and similar decisions was violated (FASB Statement of
   Concepts No. 1, ¶ 34);
16
   The principle that financial reporting should provide information about the
17 economic resources of an enterprise, the claims to those resources, and the effects
   of transactions, events and circumstances that change resources and claims to
18 those resources was violated (FASB Statement of Concepts No. 1, ¶ 40);

19     The principle that financial reporting should provide information about how
   management of an enterprise has discharged its stewardship responsibility to
20 owners (stockholders) for the use of enterprise resources entrusted to it was
   violated. To the extent that management offers securities of the enterprise to the
21 public, it voluntarily accepts wider responsibilities for accountability to
   prospective investors and to the public in general (FASB Statement of Concepts
22 No. 1, ¶ 50);

23     The principle that financial reporting should provide information about an
   enterprise's financial performance during a period was violated. Investors and
24 creditors often use information about the past to help in assessing the prospects of
   an enterprise. Thus, although investment and credit decisions reflect investors'
25 expectations about future enterprise performance, those expectations are
   commonly based at least partly on evaluations of past enterprise performance
26 (FASB Statement of Concepts No. 1, ¶ 42);

27     The principle that financial reporting should be reliable in that it represents what it
28 purports to represent was violated. That information should be reliable as well as

13

CLASS ACTION COMPLAINT

relevant to a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶ 58-59);

The principle of completeness, which means that nothing is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions, was violated (FASB Statement of Concepts No. 2, ¶ 79); and

The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶ 95, 97).

43. Defendants' false representations and material omissions were made with scienter in that: Defendants knew or recklessly disregarded that the Class Period SEC Filings and the Class Period press releases were materially false and misleading as described above; knew or were reckless in not knowing that the false financial results would be issued or disseminated to the investing public; and knowingly and substantially participated in the preparation and/or issuance or dissemination of such statements or documents.

## COUNT 1

### For Violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5

44. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

45. During the Class Period, Defendants, individually and in concert, engaged in a plan, scheme, and course of conduct, pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud upon Plaintiff and other members of the Class, and made various untrue and deceptive statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and other Class members. The purpose and effect of this scheme was to induce Plaintiff and the Class to purchase Rambus common stock at artificially inflated prices.

46. During the Class Period, Defendants, pursuant to their plan, scheme and unlawful course of conduct, knowingly and/or recklessly issued or caused to be issued statements to the investing public as described above, including the Class Period press releases and the Class Period

14

CLASS ACTION COMPLAINT

1. SEC Filings.

47. Defendants knew and/or recklessly disregarded the falsity of the foregoing statements. As senior officers and/or directors of the Company, involved in its business and operations, the Individual Defendants had access to the non-public information detailed above by virtue of their receipt of periodic internal reports detailing actual sales, advertising revenues and other financial information.

48. Throughout the Class Period, Rambus acted through the Individual Defendants, whom it portrayed and represented to the press and public as its valid representatives. The willfulness, motive, knowledge, and recklessness of the Individual Defendants are therefore imputed to Rambus, which is primarily responsible for the securities law violations of the Individual Defendants while acting in their official capacities as Company representatives, or, in the alternative, which is liable for the acts of the Individual Defendants under the doctrine of *respondeat superior*.

49. Each of the Defendants knew or recklessly disregarded the fact that the above acts and practices, misleading statements, and omissions would adversely affect the integrity of the market in Rambus's common stock. Had the adverse facts Defendants concealed been properly disclosed, Rambus's stock would not have sold at the artificially inflated prices it did during the Class Period.

50. The value of Rambus common stock declined materially upon public disclosure of the truth concerning the Company's financial circumstances, financial circumstances that were misrepresented or concealed, as alleged in this complaint. Plaintiff and other members of the Class suffered substantial damages as a result of the wrongs alleged herein.

51. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52. By reason of their status as officers and/or members of management and as directors of Rambus the Individual Defendants were "controlling persons" of Rambus within the meaning of Section 20 of the Exchange Act and had the power and influence to cause Rambus to engage in the unlawful conduct complained of herein. Because of their positions of control, the

15

CLASS ACTION COMPLAINT

Individual Defendants were able to and did, directly or indirectly, control the conduct of Rambus's business, the information contained in its filings with the SEC and public statements about its business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on his own behalf and on behalf of the Class prays for judgment as follows:

A.  Declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff to be a proper class representative and his counsel lead counsel;

B.  Awarding Plaintiff and the Class compensatory damages, together with appropriate prejudgment interest at the maximum rate allowable by law;

C.  Awarding Plaintiff and the Class their costs and expenses for this litigation including reasonable attorneys' fees and other disbursements; and

D.  Granting such other and further relief as this Court deems to be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

DATED: July 19, 2006

HULETT HARPER STEWART LLP
KIRK B. HULETT
kbh@hulettharper.com
DENNIS STEWART
dstewart@hulettharper.com
SARAH P. WEBER
sweber@hulettharper.com

*Dennis Stewart*
DENNIS STEWART

550 West C Street, Suite 1600
San Diego, CA 92101
Telephone:  (619) 338-1133
Facsimile:  (619) 338-1139

16

CLASS ACTION COMPLAINT

ABBEY SPANIER RODD ABRAMS &
  PARADIS, LLP
ARTHUR N. ABBEY
aabbey@abbeyspanier.com
NANCY KABOOLIAN
nkaboolian@abbeyspanier.com
212 East 39th Street
New York, NY 10016
Telephone:   (212) 889-3700
Facsimile:   (212) 684-5191
PASKOWITZ & ASSOCIATES
LAURENCE D. PASKOWITZ
ROY L. JACOBS
Classattorney@aol.com
60 East 42nd Street, 46th Floor
New York, NY 10165
Telephone:   (212) 685-0969
Facsimile:   (212) 685-2306

Attorneys for Plaintiff Joseph Maniglia

CLASS ACTION COMPLAINT

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint against Rambus, Inc. ("RMBS") and certain other defendants.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5. Plaintiff made the following transactions during the Class Period in the common shares of RMBS:

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 1/14/05 | 3,000 | $21.39 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

6. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7. I declare under penalty of perjury, this 19 day of July, 2006 that the information above is accurate.

Joseph Maniglia